The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Neill S. Fuleihan and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
* * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The North Carolina Industrial Commission has jurisdiction over the subject matter in this case and the parties are all properly before the Industrial Commission.
2. At all relevant times there was an employee-employer relationship between the plaintiff and the defendant-employer.
3. The carrier on the risk was Liberty Mutual Insurance Company through May 30, 1988, was National Union Fire Insurance Company from May 31, 1988 through December 31, 1989, and was the employer as a duly qualified self-insured from January 1, 1990 to the present.
4. At all times relevant to this claim, plaintiff's average weekly wage was $233.61.
5. Medical records from Doctors Craig R. Bennett, Patrick Box, Edward Pisko, Paul Sutej, Gary Poehling, Richard Rauck, Adrian Griffin, S. Holloway, Frank Pollock, Phillip Compeau, Jerry Watson, Richard Adams, and John L. Bond, and medical records from Holly Farms-Tyson Foods, Inc. Employee Health Services, collectively marked as Stipulated Exhibit 1, are received into evidence.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. On the date of the initial evidentiary hearing in this case, July 29, 1993, plaintiff was thirty-three years of age. She had worked for defendant-employer since November 6, 1979 in various job capacities. From shortly after she was hired on November 6, 1979 until February 1, 1988, her job duties consisted of boning chicken thighs or chicken breasts, which duties required continuous repetitive use of her hands, wrists and upper extremities.
2. On February 1, 1988, plaintiff was transferred off the deboning lines and reassigned to the individually quick frozen (IQF) line. Plaintiff performed a variety of jobs on the IQF line. Each job on the IQF line required that plaintiff engage in a number of different tasks in order to avoid continuous repetitive activity with her upper extremities.
3. In 1984, the plaintiff complained of pain in her ribs, chest and shoulders for which she filed a workers' compensation claim and received medical and indemnity benefits from defendant-employer's workers' compensation carrier, Liberty Mutual Insurance Company, pursuant to an approved Form 21, Agreement for Compensation for Disability (I.C. File Number 049702).
4. Although plaintiff contends that her symptoms have increased and that her condition has progressively worsened since 1984, she did not file a claim for change of condition or for additional workers' compensation benefits within two years after receipt of her final compensation check in Industrial Commission claim I.C. No. 049702, which she received on August 10, 1984.
5. On January 16, 1987, defendant-employer prepared an Industrial Commission Form 19, Employer's Report of Injury to Employee, in the instant claim regarding plaintiff's right wrist due to plaintiff's reported complaint of weakness and pain in her right wrist which she reported had been ongoing for approximately one year.
6. Thereafter plaintiff was seen by Dr. Bond and was treated conservatively, and surgically on March 9, 1987, for de Quervain's tenosynovitis. The Form 19 which had been prepared by defendant-employer on January 16, 1987 was received by the Industrial Commission on May 13, 1987.
7. Between 1984 and 1988, plaintiff was also seen by Dr. Bennett and Dr. Holloway for neck, shoulder and low back pain.
8. In August of 1988, plaintiff was seen by Dr. Richard Adams and diagnosed with, among other things, a recurrent ganglion cyst on the right wrist which Dr. Adams excised on September 14, 1988.
9. In 1989, plaintiff was examined by Dr. Pollock who diagnosed her as having chronic tenosynovitis of the left wrist, and a tear of the tendon in her right hand as a result of an injury in December of 1987 when she struck her right hand on a vat at work. As a result of the December 1987 injury, Dr. Adams surgically repaired the extensor mechanism of plaintiff's right index finger on February 22, 1989. This injury was the subject matter of a workers' compensation claim in I.C. No. 910161.
10. Thereafter, plaintiff continued to be seen by Dr. Adams and Dr. Bond for complaints of pain in her upper extremities.
11. In 1990 and 1991, the plaintiff was out of work for thyroid surgery, breast surgery, and foot surgery, which conditions were unrelated to her employment with defendant-employer.
12. In 1991, plaintiff also worked at a second job at the Pizza Hut in North Wilkesboro, in addition to her regular employment at defendant-employer.
13. On March 9, 1991, plaintiff filed a Form 18, Notice of Accident to Employer, in the instant claim alleging an occupational disease affecting her right shoulder, neck and back.
14. In July of 1991, plaintiff slipped on a wet floor at work but did not fall to the floor. She did not file a workers' compensation claim as a result of this incident; however, plaintiff has complained of pain in her lower back since the date of that incident, attributing her pain to the slipping incident. Additionally, plaintiff has informed all of her treating and evaluating physicians since mid-1991 that all of her symptoms worsened after that fall.
15. In early 1992, Dr. Adams referred plaintiff to Dr. Box, a rheumatologist, as a result of her multiple and varied complaints. Dr. Box diagnosed plaintiff as having arthralgias of uncertain etiology, fibromyalgia, and connective tissue disorder, took her out of work, and referred her to another rheumatologist, Dr. Paul Sutej at Bowman Gray School of Medicine, whom she saw on April 22, 1992. Plaintiff provided Dr. Sutej with a history of painful joints for approximately eight years and provided Dr. Sutej with current complaints of pain in all of her joints in her body, including the temporal mandibular joint. Dr. Sutej diagnosed plaintiff as having fibromyalgia and released her to return to work. Plaintiff was also seen by Doctors Compeau and Pisko during this period of time.
16. Thereafter, plaintiff was seen at the Pain Clinic at North Carolina Baptist Hospital where she was examined and treated by Dr. Richard Rauck on numerous occasions for fibromyalgia.
17. On June 7, 1994, Dr. Brenner, an orthopedist in Pinehurst, North Carolina, performed an independent medical examination of plaintiff.
18. Since 1989, in addition to the aforementioned medical care providers listed hereinabove, plaintiff has also been seen by Doctors Poehling, Rice, Griffin, and Watson.
19. Plaintiff has not worked with defendant-employer since February of 1992 when she began a medical leave of absence for reasons unrelated to the instant claim. Plaintiff failed to return to work at the expiration of her leave of absence and was subsequently terminated from employment with defendant-employer.
20. Plaintiff has fibromyalgia. Plaintiff was informed by a competent medical authority in early 1992 that she had fibromyalgia.
21. There is insufficient evidence of record from which to determine by its greater weight that plaintiff was out of work as a result of her fibromyalgia until early 1992.
22. There is insufficient evidence of record from which to determine by its greater weight that plaintiff's employment with defendant-employer placed her at an increased risk of developing fibromyalgia as compared to members of the general public not so exposed.
23. There is insufficient evidence of record from which to determine by its greater weight that plaintiff's employment with defendant-employer caused, or was a significant contributing factor in the development of, plaintiff's fibromyalgia.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's fibromyalgia is not due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and is, therefore, not an occupational disease. G.S. § 97-53(13).
2. Plaintiff, therefore, is entitled to no compensation for an occupational disease under the North Carolina Workers' Compensation Act. G.S. § 97-52; G.S. § 97-53(13).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. Under the law, plaintiff's claim must be, and the same is, DENIED.
2. Each party shall bear its own costs, except that defendants shall collectively pay, in equal amounts, expert witness fees in the amount of $225.00 to Dr. Paul Sutej, $250.00 to Dr. Mark Brenner, and $250.00 to Dr. Richard Adams.
 S/ __________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ________________________ J. RANDOLPH WARD COMMISSIONER
LKM/bjp